IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| THOMAS D. SCOTT, | § | |
| | § | |
| Appellant, | § | |
| | § | |
| v. | § | Civil Action No. 4:19-cv-00282-P |
| | § | |
| MICHELLE PURCELL et al., | § | |
| | § | |
| Appellees. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Appellant Thomas D. Scott's Brief (ECF No. 7); Appellees Michelle Purcell's, Julie Moore's, Herman and Mikeala Kellewood's, Sandra Vasquez's, and Karen Steinhauser's Brief (ECF No. 10); and Scott's Reply Brief (ECF No. 12). On appeal, Scott challenges the bankruptcy court's Memorandum Opinion and Order Denying Scott's Motion to Enforce. ECF No. 4-1 at 15–28. Having considered the briefs and applicable law and finding no reversible error, the Court **AFFIRMS** the bankruptcy court's order.

## BACKGROUND

On November 13, 2017, Preferred Care, Inc.[1] and thirty-three limited partnership entities[2] filed voluntary Chapter 11 bankruptcy petitions in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division. *See In re Preferred Care,*

---

[1] Preferred Care, Inc. is a Delaware corporation owned by Scott. ECF No. 4-2 at 405.

[2] The entities Texas limited partnerships that are structured with a Texas limited liability company as the 1% general partner and Scott as the 99% limited partner. ECF No. 4-4 at 559–62.

*Inc. et al.*, Case No. 17-44642-mxm-11. Subsequently, the general partners of each of the limited partner debtors (for simplicity, Preferred Care, Inc.; the thirty-three limited partnerships; and the general partner debtors will be collectively referred to herein as "Debtors") filed voluntary Chapter 11 bankruptcy petitions. ECF No. 4-1 at 2. The Debtors' bankruptcy cases were jointly administered under Case No. 17-44642. *Id.*

Debtors are part of a network of 108 skilled nursing, assisted and independent living, and mental health facilities ("Facilities"). *Id.* Twenty-one of Debtors' Facilities are in Kentucky and twelve are in New Mexico. *Id.* at 3. As of the date of the bankruptcy petition filing, there were approximately 163 lawsuits pending against some or all Debtors. *Id.* These prepetition lawsuits were stayed upon the commencement of the bankruptcy proceeding. *Id.*

On May 18, 2018, Preferred Care, Inc. and the various Debtors filed a motion to approve a settlement agreement ("Motion to Approve"). *Id.* at 4. On July 6, 2018, the other Debtors filed a motion joining the Motion to Approve. *Id.* The Motion to Approve concerned a settlement and release among the Debtors, Debtors' bankruptcy estates, Scott, Robert J. Riek, and some of Scott's affiliated entities. *Id.* The settlement agreement reads, in relevant part, as follows:

> For and in consideration of the Settlement Payment and other good and valuable consideration provided by this Agreement, effective upon the Settlement Effective Date, each Debtor, on behalf of itself and its Estate and any other person or entity who asserts or may purport to assert any claim or cause of action derivatively, on behalf of, under, or through any of them (collectively, the "Estate Releasing Parties").

ECF No. 4-4 at 24.

On July 31, 2018, the bankruptcy court entered an order granting the Motion to Approve, thus approving settlement in which Debtors and their bankruptcy estates released all claims and causes of action against Scott, Riek, and some of Scott's affiliated entities. ECF No. 4-1 at 30–51.  The bankruptcy court order barred and enjoined any party from asserting any released claim against Scott and other released party, but it also expressly did not bar or enjoin certain claims as follows:

> For the avoidance of doubt and notwithstanding anything to the contrary in this Order or the Settlement Agreement, no creditor or other non-Debtor party shall be barred or enjoined from (a) asserting against any Scott Released Party any claim, liability, obligation, or cause of action that (i) is not property of any of the Debtors' estates or derivative of a claim or cause of action that is property of any of the Debtors' estates, (ii) is based on an independent legal duty owed by a Scott Released Party to such creditor or other non-Debtor party, and (iii) may be asserted by such creditor or other non-Debtor party directly against any of the Scott Released Parties under applicable non-bankruptcy law (each, a "Direct Third Party Claim"), or (b) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of or in connection with or with respect to any Direct Third Party Claim.

ECF No. 4-4 at 16.

After the entry of the bankruptcy court's settlement order, Appellees—all individuals who had family members allegedly injured while residents at one of the Kentucky or New Mexico Facilities—filed five separate state-court lawsuits, all of which name Scott individually as a party defendant and seek to hold him individually liable for his acts and omissions with regard to the understaffing of the Facilities.  *See* ECF No. 4-2 at 724–833.  Appellees' state-court lawsuits allege, *inter alia*, that Scott knowingly approved and managed budgets at the Facilities that resulted in understaffing, despite having funds available to provide adequate staffing.  *See, e.g.*, *id.* at 773.  All state-court

lawsuits allege direct liability negligence for Scott's alleged breach of Kentucky's and New Mexico's duties of care. *See e.g.*, *id.* Appellees allege that Scott's breach of these duties of care caused Appellees' family members various and specific injuries. *See e.g.*, *id.* at 771 ("Due to the wrongful conduct . . . , John Michael Purcell suffered . . . a) Dislocation of right hip prosthesis; b) Pressure ulcer; c) Right hip hematoma; and d) Infections.").

On October 15, 2018, Scott filed a Motion to Enforce the Permanent Injunction and Enjoin the State Court Lawsuits from proceeding ("Motion to Enforce"). *Id.* at 693. The bankruptcy court denied the Motion to Enforce and explained as follows: "Nothing on the face of the Complaints suggests that the [Appellees'] alleged injuries stem from a depletion of the Debtors' assets or other harm to the Debtors. The claims, therefore, are not derivative claims owned by the Debtors, but instead are direct claims owned by the [Appellees]." ECF No. 4-1 at 25. In analyzing Appellees' claims from the face of the complaints, the bankruptcy court concluded that the allegations do not "rely on general harm to the Debtors (through a depletion of assets or otherwise) and are not property of the Debtors' estates." *Id.* at 27. The bankruptcy court expressly declined to consider the ultimate legal and factual merits of the Personal-Injury Claimants' state-court claims: "The Kentucky and New Mexico courts ultimately will decide the merits." *Id.*

Scott appealed the denial of his Motion to Enforce and filed his brief challenging the order. ECF No. 7. Appellees filed a responsive brief (ECF No. 10), and Scott filed a reply. ECF No. 12. This appeal is now ripe for review.

## LEGAL STANDARD

"A federal district court has jurisdiction to hear appeals—and an aggrieved litigant may appeal as of right—from the 'final judgments, orders, and decrees' of a bankruptcy court." *Phillips v. Travelers Cas. & Sur. Co. of Am.*, No. ADV 10-03075, 2012 WL 3779294, at *1 (S.D. Tex. Aug. 30, 2012) (quoting 28 U.S.C. § 158(a)(1)). "[A] bankruptcy court's findings of fact are reviewed for clear error, and its conclusions of law are reviewed *de novo*." *In re SI Restructuring, Inc.*, 542 F.3d 131, 135 (5th Cir. 2008) (citation omitted).

## ANALYSIS

The Court is presented with two issues, which can be distilled into a single issue: Are Appellees' claims asserted against Scott in the New Mexico and Kentucky state-court lawsuits derivative or direct claims?[3] If the bankruptcy court is correct that the claims are direct, then it properly denied the Motion to Stay. If, however, the bankruptcy court erred and the claims are derivative and thus belonged to the Debtors' estates, then those claims were settled, released, and Appellees' should be enjoined from pursuing them. For the reasons set forth below, the Court concludes that the claims are direct and accordingly **AFFIRMS** the bankruptcy court's Order denying the requested injunction.

---

[3]Although Scott presents two separate issues in his Appellant's Brief (ECF No. 7 at 2), in his Reply Brief, Scott clarifies that "[t]here is no dispute that the determinative issue decided by the Bankruptcy Court and now before this Court for *de novo* review is whether the claims asserted against Scott and Riek in the Post-Injunction Litigation are derivative . . . ." ECF No. 12 at 1. Indeed, the Court's reading of Scott's issues presented reveals that both concern the bankruptcy court's Order concluding that Appellees' claims are direct and not derivative.

**A.     Direct and Derivative Claims**

A bankruptcy estate is comprised in part of "all legal or equitable interest of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). "All legal or equitable interests" include all "rights of action as bestowed by either federal or state law." *In re S.I. Acquisition, Inc.*, 817 F.2d 1142, 1149 (5th Cir. 1987) (citing *In re Mortgage America Corp.*, 714 F.2d 1266, 1274 (5th Cir. 1983)). "If a cause of action belongs to the estate, then the trustee has exclusive standing to assert the claim." *Matter of Educators Grp. Health Tr.*, 25 F.3d 1281, 1284 (5th Cir. 1994) (citing *S.I. Acquisition*, 817 F.2d at 1153–54)). "However, the trustee has no right to bring claims that belong solely to the estate's creditors." *In re Seven Seas Petroleum, Inc.*, 522 F.3d 575, 584 (5th Cir. 2008).

Whether a particular state-law claim belongs to the bankruptcy estate depends on whether under applicable state law the debtor could have raised the claim as of the commencement of the case. *See Educators Grp. Health Tr.*, 25 F.3d at 1284 (citing *S.I. Acquisition*, 817 F.2d at 1142; *Mortgage America*, 714 F.2d at 1275–77). Courts make this determination "by reference to the facial allegations in the complaint." *Seven Seas Petroleum, Inc.*, 522 F.3d at 583; *see Educators Group Health Tr.*, 25 F.3d at 1285 (resolving "the question of what specific causes of action belong to either party . . . based on the application of the legal standard discussed above to the *facial allegations in the complaint*") (emphasis added). In this inquiry, courts specifically look to the nature of the alleged injury for which relief is sought and consider the relationship between the debtor and the injury. *See Educators Grp. Health Tr.*, 25 F.3d at 1284–85; *In re R.E. Loans LLC*,

519 B.R. 499, 512 (Bankr. N.D. Tex. 2014) (observing the "unremarkable proposition" that "the nature of the injury and the harm or damage suffered must be considered when deciding whether the cause of action is direct or derivative"); *In re E.F. Hutton Sw. Props. II, Ltd.*, 103 B.R. 808, 812 (Bankr. N.D. Tex. 1989) ("The injury characterization analysis should be considered as an inseparable component of whether an action belongs to the [estate] or [creditor].").  "If a cause of action alleges only indirect harm to a creditor (i.e., an injury which derives from harm to the debtor), and the debtor could have raised a claim for its direct injury under the applicable law, then the cause of action belongs to the estate." *Educators Grp. Health Tr.*, 25 F.3d at 1284 (citations omitted).  "Conversely, if the cause of action does not explicitly or implicitly allege harm to the debtor, then the cause of action could not have been asserted by the debtor as of the commencement of the case, and thus is not property of the estate." *Id.*

The Fifth Circuit has recognized that derivative and direct claims may share a factual predicate and that a shared factual predicate does not necessarily mean the claim is a derivative one.  *See Seven Seas Petroleum*, 522 F.3d at 585 (recognizing that "the existence of common parties and shared facts between the bankruptcy and the bondholders' suit does not necessarily mean that the claims asserted by the bondholders are property of the estate"); *see also R.E. Loans LLC*, 519 B.R. at 512 ("[T]he fact that the bankruptcy estate may have claims for its own direct injuries that it could have brought as of the commencement of the case does not mean that the creditor's claims are merely derivative of the debtor's.").

7

B.     **Application of the Law to the Facts**

Unlike the lawsuits pending at the time the underlying Chapter 11 bankruptcy petition was filed, Appellees' state-court lawsuits do not name any Debtors as defendants. ECF No. 4-1 at 21. Rather, Appellees' state-court lawsuits assert, *inter alia*, claims of negligence against Scott individually. *See, e.g.*, ECF No. 4-2 at 731 ("The causes of action made the basis of this suit arise out of Defendant Thomas D. Scott's breach of duties to manage Bowling Green Nursing and Rehabilitation Center reasonably and in compliance with all applicable federal, state, and local laws, regulations, and codes, and within accepted professional standards and principles. . . . Thomas Scott breached a personal duty to the care of Dorothy Neighbors."). That is, Appellees allege that Scott individually breached his duty by directing staffing levels at the Facilities and approving staffing budgets at an unreasonably low level, despite having sufficient funds to provide adequate staffing.[4] *See, e.g., id.* These claims are premised on a recognized legal duty in both Kentucky and New Mexico. *See, e.g., Murphy ex rel. Reliford v. EPI Corp.*, No. 2002-CA-002173-MR, 2004 WL 405754, at *2 (Ky. Ct. App. Mar. 5, 2004, review denied); *C&H Const. & Paving Co. v. Citizens Bank*, 597 P.2d 1190, 1197 (N.M. Ct. App. 1979).

Scott contends that the state court pleadings are all "designed to circumvent the Scott Settlement Order and Injunction," so the claims do fall outside of the ambit of

---

[4]To underscore that Appellees are attempting to hold Scott directly liable, the Court notes that the state lawsuits all expressly disavow any claims of vicarious liability. *See, e.g., id.* at 732 ("Plaintiff's claim against Defendant Thomas Scott is solely for the direct liability of Defendant Thomas Scott for Defendant's personal actions, and not for any vicarious liability through the nursing home, or its staff[,] or the nursing home's management companies, or its staff.").

derivative liability simply because they are artfully pleaded. Ant.'s Br. at 11. Indeed, Scott contends that what Appellees actually have done is simply reallege the same facts that previously formed the basis of the prepetition claims and only allege them against Scott. Ant.'s Reply Br. at 3. Thus, as Scott asserts, "[t]he mere relabeling of a derivative claim does not change its nature." *Id.*

Given that the Court is required to explore the nature of the alleged injury, Scott's argument to disregard Appellees' labels ascribed to their state-court claims has some force. *See Tronox Inc. v. Kerr-McGee Corp.*, 855 F.3d 84, 100 (2d Cir. 2017) ("In distinguishing derivative claims from particularized claims exclusive to individual creditors, labels are not conclusive, since plaintiffs often try, but are not permitted, to plead around a bankruptcy."). That is, the Court does on some level look beyond the mere labels Appellees chose to use in their state-court pleadings. However, this does not change that the Fifth Circuit has plainly instructed that the Court's inquiry is based on the facial allegations in Personal-Injury Claimants' state-court pleadings. *See Seven Seas Petroleum*, 522 F.3d at 583 ("Whether a specific cause of action belongs to a bankruptcy estate is likewise a matter of law that we decide by reference to the facial allegations in the complaint."). In the Court's view, Scott invited the bankruptcy court to go beyond the facial allegations in Appellees' complaints to consider the merits of the claims, and the bankruptcy court appropriately declined the invitation.

The Court's review of Appellees' alleged damages reveal that Appellees seek to recover for specific personal injuries suffered as a result of Scott's withholding of available funds which resulted in understaffing. *See, e.g.*, ECF No. 4-2 at 739 ("Due to the wrongful

9

conduct of Defendants, Dorothy Neighbors suffered accelerated deterioration of her health and physical condition beyond that caused by the normal aging process, including, but not limited to, the following: a) Pressure Ulcer; b) Upper Respiratory Infection; and c) Wound Infection."); *see also id.* at 742 ("As a direct and proximate result of such negligent, grossly negligent, wanton, or reckless conduct, Dorothy Neighbors suffered the injuries described herein, and Plaintiff asserts a claim for judgment for all compensatory and punitive damages against Thomas D. Scott including . . . medical expenses, extreme pain and suffering, mental anguish, disfigurement, hospitalizations, degradation, and unnecessary loss of personal dignity . . ."). By looking at Appellees' alleged injuries and Debtors' relationship to the alleged injuries, the Court concludes like the bankruptcy court that Appellees' claims against Scott are not owned by the estate and are thus direct claims. *See In re Educators Grp. Health Tr.*, 25 F.3d at 1284–85.

      The Court (like the bankruptcy court, see ECF No. 4-1 at 23) finds instructive *In re Buccaneer Resources, L.L.C.*, a case in which the Fifth Circuit analyzed a bankruptcy court opinion that had concluded that a business entity's suit alleging the defendants tortiously interfered with a contract did not add new allegations but simply "just realleged the facts that gave rise to the breach of fiduciary claims involving derivative harm." 912 F.3d 291, 295 (5th Cir. 2019) (citing *In re Dexterity Surgical, Inc.*, 365 B.R. 690, 702 (Bankr. S.D. Tex. 2007)). The Fifth Circuit recited that the bankruptcy court's opinion had not only concluded that "the mere relabeling of a derivative claim did not change its nature[,]" but it went on to "note weaknesses in the tortious interference theory." *Id.* Without rejecting the opinion outright, the Fifth Circuit commented that the analysis of the claim's

10

weaknesses "may be in tension with our later guidance that courts deciding who owns a claim should not consider whether the claim 'will ultimately prove to be legally or factually valid.'" *Id.* (quoting *Seven Seas*, 522 F.3d at 585). Ultimately, the Fifth Circuit held that "[a]s long as the injury a creditor is pursuing against a third party does not stem from the depletion of estate assets, the injury is a direct one that does not belong to the estate." *Id.*

Because the Court's task today is not to "consider whether [Appellees'] claim[s] 'will ultimately prove to be legally or factually valid,'" but is instead to determine whether Appellees' injury did or did not stem from the depletion of Debtors' estate assets, and because the Court concludes that Appellees' alleged injuries are unique to the residents of the Facilities and that they did not stem from the depletion of Debtors' estate assets, the Court holds that Appellees' claims against Scott are direct and have not been released. *Seven Seas*, 522 F.3d at 585; *see also In re R.E. Loans, LLC*, 519 B.R. at 512. As such, the bankruptcy court did not err by denying the Motion to Enforce.

Therefore, having reviewed the bankruptcy court's order for error and finding none, Scott's issues on appeal are **OVERRULED.**

## CONCLUSION

Having **OVERRULED** Scott's issues on appeal, the bankruptcy court's Order is **AFFIRMED.**

**SO ORDERED** on this **30th day** of **October, 2020.**

Mark T. Pittman
UNITED STATES DISTRICT JUDGE

11